(No. 67703.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. FREDDIE ROGERS, Appellee.

*Opinion filed September 27, 1989.—Rehearing denied January 29, 1990.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Inge Fryklund, Renee Goldfarb and Andrea K. Muchin, Assistant State's Attorneys, of counsel), for the People.

Randolph N. Stone, Public Defender, of Chicago (Frank Madea and Ronald P. Alwin, Assistant Public Defenders, of counsel), for appellee.

JUSTICE RYAN delivered the opinion of the court:

Defendant, Freddie Rogers, was arrested and charged in an information in the circuit court of Cook County with the offense of child abduction, in violation of section 10—5(b)(10) of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)). The information alleged that he intentionally lured two children, without their parents' consent, for the unlawful purpose of committing criminal sexual abuse. After a preliminary hearing, the defendant filed a motion to dismiss, claiming that the statutory provision was unconstitutional. The circuit court of Cook County agreed that the provision relieved the State of its burden of proof as to one of the elements of the offense and declared the statute unconstitutional. The State then filed a direct appeal as a matter of right to this court, pursuant to our Rule 603 (107 Ill. 2d R. 603). We reverse and remand.

On August 18, 1987, defendant was arrested for violation of section 10—5(b)(10) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(b)(10)), which states, in relevant part, that a person commits child abduction when he:

"Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child for other than a lawful purpose.

For the purposes of this subsection (b), paragraph (10), the luring or attempted luring of a child under the age of 16 into a motor vehicle without the consent of the parent or lawful custodian of the child shall be prima facie evidence of other than a lawful purpose."

Section 10—5(c)(4) provides that it shall be an affirmative defense if the defendant shows that he "lured or attempted to lure a child under the age of 16 into a motor vehicle for a lawful purpose." Ill. Rev. Stat. 1987, ch. 38, par. 10—5(c)(4).

The trial court held a preliminary hearing on August 21, 1987, to determine whether there was probable cause to pursue the criminal charges. The evidence presented at the hearing was that at approximately 8 p.m. on August 18, defendant approached K.M. at a game room in downtown Chicago. K.M. was 14 years old at the time. Defendant asked if he and his 13-year-old friend, A.B., would help him unload some newspapers which were in a nearby alley. The boys agreed and they went with defendant in his car to the alley. During the ride, the defendant offered to pay each of them $5 for their help. After reaching the alley, defendant parked his car and left to look for his partner. Shortly afterwards, he returned and said that they had to wait for a few minutes. At this time, A.B. was in the front seat and next to the door, K.M. was next to him, and the defendant was in the driver's seat. While waiting, defendant told the boys that he was going to move their seat back. In his attempt to do so, his hand touched A.B. in his "private parts." In response, A.B. pushed the defendant's hand away. The defendant then claimed he wanted to fix the seat belt and while doing so, he briefly placed his elbow

on K.M.'s groin area. When defendant again touched his "privates," K.M. pushed his hand away. The boys remained in the car for five more minutes, at which point defendant said they could leave. Defendant then gave K.M. $1.65, stating that that was all he had, but that he would pay them $5 if they would let him "suck them." The two boys left the car and ran down the alley and across the street to a policeman, Officer Paoletti, and told him what had happened.

Officer Paoletti testified that he had seen the defendant's parked car in the alley and had been watching it through binoculars for approximately five minutes. The officer observed the youths exit the car and run towards him. Paoletti arrested the defendant after the boys told him that defendant had just molested them. Testimony was also presented from a parent of each child that neither parent knew the defendant nor did they give their child permission to enter his car.

After the hearing, the trial court found that there existed probable cause to press criminal charges. On September 4, 1987, the State's Attorney filed a two-count information against the defendant. Count I stated:

> "[Defendant] intentionally lured [K.M.], a child under the age of 16 years, without the consent of the parent of said child for an unlawful purpose, to wit: to commit the offense of criminal sexual abuse ***."

Count II charged defendant with the same offense and named A.B. as the victim. In June 1988, defendant filed a motion to dismiss, claiming that section 10—5(b)(10) was unconstitutional. He argued that one element of the crime is that the child was lured into the vehicle for other than a lawful purpose. However, the statute declares that if a person under 16 years of age is lured into a vehicle without parental consent, it is *prima facie* evidence of other than a lawful purpose. The defendant argues that this presumption scheme and burden-shifting

unconstitutionally relieves the State of its burden of proof beyond a reasonable doubt as to an element of the crime. He contends that this presumption is not validated by section 10—5(c)(4), which allows the defendant to present as an affirmative defense evidence of a lawful purpose. Defendant also argued that the statute was unconstitutionally vague and overbroad. The trial court agreed that section 10—5(b)(10) created a presumption which unconstitutionally shifted the burden of proof and dismissed the indictment.

The State appealed to this court, after its motion to reconsider was denied. The State first argues that the defendant does not have standing to challenge the statute based on an application of the presumption of an unlawful purpose because the State did not rely on any such presumption. Rather, the information specifically alleged an unlawful purpose, criminal sexual abuse, which is a crime specifically defined in section 12—15 of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 12—15). In the probable cause hearing the State presented evidence as proof of that crime. Thus, the defendant was charged with and the State was bound to prove a particular unlawful purpose. The State also argues that the statute merely shifts a slight burden of production onto the defendant and that such a statutory scheme has been held valid by a number of decisions. *People v. Embry* (1988), 177 Ill. App. 3d 96; see also *People v. Cisel* (1982), 110 Ill. App. 3d 1070; *People v. King* (1979), 78 Ill. App. 3d 879.

The defendant responds that standing has been granted in similar situations. (*People v. Ziltz* (1983), 98 Ill. 2d 38; *People v. Mayberry* (1976), 63 Ill. 2d 1.) He further contends that it is either an unconstitutional mandatory presumption (see *Francis v. Franklin* (1985), 471 U.S. 307, 325, 85 L. Ed. 2d 344, 360, 105 S. Ct. 1965, 1977), or, if interpreted as a permissive inference,

it violates *People v. Housby* (1981), 84 Ill. 2d 415. Finally, he responds that the statute is vague and overbroad.

The majority of cases addressing the constitutionality of presumptions deal with jury instructions, most of which were based on a statute, thus allowing the court to apply the law to a factual context. (See *Carella v. California* (1989), 491 U.S. 362, 105 L. Ed. 2d 218, 109 S. Ct. 2419; *Francis v. Franklin* (1985), 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965; *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450; *Patterson v. New York* (1977), 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319; *Mullaney v. Wilber* (1975), 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881; *People v. Housby* (1981), 84 Ill. 2d 415; *People v. King* (1979), 78 Ill. App. 3d 879.) However, this case did not go to a jury; rather it was dismissed on motion before trial. The trial judge based his ruling on a facial reading of the statute and the constitutionality of a presumption in the statute, and not on the statute as it had, up until that point, been applied to the defendant.

A fundamental principle of constitutional law is that a court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question. (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 201.) We will not determine the constitutionality of a provision of an act which does not affect the parties to the cause under consideration (*People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 71), nor will we consider a constitutional question if the case may be disposed of on other grounds (*People v. Vandiver* (1971), 51 Ill. 2d 525, 527-28). A party may question the constitutional validity of a statutory provision only if he or she has sustained or is in immediate danger of sustaining some direct in-

jury as a result of enforcement of the statute (*People v. Esposito* (1988), 121 Ill. 2d 491, 512) or if the unconstitutional feature is so pervasive as to render the entire act invalid (*People v. Mayberry* (1976), 63 Ill. 2d 1, 6; *Huckaba v. Cox* (1958), 14 Ill. 2d 126, 129).

A number of similar cases have applied the above principles and held that the defendant does not have standing. The defendants in *City of Chicago v. Lawrence* (1969), 42 Ill. 2d 461, were convicted of interfering with a police officer in the performance of his duties. On appeal, defendants claimed the ordinance they were convicted under was unconstitutional because it did not require the offense to be committed "knowingly." The court held the defendants lacked standing to raise the issue, reasoning:

> "Even if a construction could be given which would render it void because of such an absence, defendants are in no position to raise the question. It is an established rule that courts will not entertain objections to an allegedly unconstitutional feature where the objecting party is not in any way aggrieved thereby. \*\*\* In the case at bar there was nothing inadvertent or unknowing about defendants' interference. It is clear that they acted with full scienter, the officer having in fact advised them of his assignment when he first spoke to them. \*\*\* They are not in a position to raise a constitutional question based on lack of scienter." 42 Ill. 2d at 464-65.

In *People v. Bombacino* (1972), 51 Ill. 2d 17, a 16-year-old defendant was transferred from the jurisdiction of the juvenile division pursuant to section 2—7(3) of the Juvenile Court Act (Ill. Rev. Stat. 1967, ch. 37, par. 702—7(3)). On appeal, defendant challenged the constitutionality of section 2—7(3), which authorized the chief judge of the circuit court to review the decision of a juvenile court judge which denied removal of the defendant from the jurisdiction of the juvenile court.

The court did not review the validity of the provision, stating:

> "The gist of the contention is that this section grants appellate powers to the chief judge of the circuit to review the decision of another judge of the same court. However, in the present case the judge presiding in the juvenile division did not object to the removal of the action and the matter was therefore not referred to the chief judge of the circuit court for decision and disposition as provided for in the statute. The defendant therefore lacks standing to challenge the constitutionality of this provision of the statute because the same is not involved in this case and the defendant was not in any way aggrieved by this provision which he now claims to be unconstitutional. One who would attack a statute as unconstitutional must bring himself within the class as to whom the law is unconstitutional." 51 Ill. 2d at 19-20.

A statute in *People v. Diekmann* (1918), 285 Ill. 97, granted a commission power to issue permits for the removal of rough fish from preserves. Defendant challenged the constitutional validity of this grant of power. The court found, however, that defendant had not sought a permit and was not aggrieved by the statutory proviso; rather, the information charged him with using an illegal device for the removal of rough fish. Therefore, the court would "not discuss the constitutionality of a provision of an act which does not affect the parties to the cause under consideration or where the party urging the invalidity of such provision is not in any way aggrieved by its operation." 285 Ill. at 101. See also *People v. Esposito* (1988), 121 Ill. 2d 491 (defendant received a judicial driving permit pursuant to section 6—206.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1) and later challenged the statute as a violation of separation of powers, but the court held he lacked standing because he had not sustained an injury as a result of enforcement of the provision).

Consistent with these opinions, defendant may not challenge the presumption of the child abduction statute because, as construed and applied to him, the presumption is not applicable. In this case, the State did not, in its information, charge the defendant with merely violating section 10—5(b)(10), which would have meant that it relied on the presumption in the statute. Instead, the charge was more specific. It alleged that the alleged purpose of luring the children to the car was to commit the criminal act of criminal sexual abuse. In furtherance of proving the specific unlawful purpose, at the preliminary hearing the State presented the testimony of the two boys and a police officer detailing the sexual abuses involved. The State was thus bound to prove the unlawful purpose of the crime of criminal sexual abuse and it forfeited the benefit of relying on a presumption that a child was lured for "some unlawful purpose." Further, we do not believe the presumption provision is so pervasive as to invalidate section 10—5(b)(10) of the child abduction statute (Ill. Rev. Stat. 1985, ch. 38, par. 10—5(b)(10)). This is demonstrated by the information in this case, which charged the defendant with a violation of section 10—5(b)(10), but did not need to rely on the presumption. Therefore, at this stage in the proceeding, defendant lacked standing to complain of the application of a presumption which was not being applied to him—though, depending on how the jury instructions are phrased, following conviction this defendant may have standing to claim an unconstitutional burden-shifting.

Defendant, however, argues that in *People v. Mayberry* (1976), 63 Ill. 2d 1, and *People v. Ziltz* (1983), 98 Ill. 2d 38, we granted standing to defendants in situations similar to this. We, however, do not find that these cases support the defendant's position. In *Mayberry*, we reviewed two circuit court orders, one which held the graduated penalty provision of the Cannabis Control Act

unconstitutional (Ill. Rev. Stat. 1973, ch. 56½, par. 705), and another order which held unconstitutional a similar provision of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1973, ch. 56½, par. 1401). The lower courts held that the relevant acts provided for punishment based upon the amount of a "substance containing" cannabis or a controlled substance, rather than upon the pure substance sought to be controlled. The courts found that this classification scheme did not bear a reasonable relationship to the legislative purposes of the acts. The State argued that defendants did not have standing to claim a constitutional violation because nothing in the record indicated that they were charged with delivery of anything but pure cannabis and pure controlled substances. Therefore, they could not claim that a classification based on anything other than a pure substance was unconstitutional.

In holding that the defendants had standing to make a challenge based on the two classifications, we reviewed the indictments and found that one defendant "was not indicted for the delivery of cannabis but for the delivery of a 'substance containing' cannabis," and the other indictment was not "for the delivery of controlled substances but for the delivery of 'substances containing' controlled substances. Thus, to prove the offenses alleged, the State had no burden to prove the quantity of the pure cannabis or pure controlled substances involved." (*Mayberry*, 63 Ill. 2d at 7.) In the instant case, we have performed a similar analysis. However, after reviewing the information filed in this case, we find that the State does not rely on the presumption; instead, the information specifies an unlawful purpose which the State bears the burden of proving beyond a reasonable doubt. Therefore, unlike the defendants in *Mayberry*, the prosecution of defendant is not based on the alleged unconstitutional application of a statutory provision.

The defendant in *People v. Ziltz* (1983), 98 Ill. 2d 38, was charged with violation of section 11—501 of the Illinois Vehicle Code, which stated:

"(a) A person shall not drive or be in actual physical control of any vehicle within this State while:

1. The alcohol concentration in such person's blood or breath is 0.10 or more based on the definition of blood and breath units in Section 11—501.2." (Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(a)(1).)

The trial court held the statute unconstitutional because it created a mandatory presumption of guilt on the part of the defendant and shifted the burden of persuasion to the defendant to establish innocence. On appeal, the State argued defendant had no standing to challenge the constitutionality of the statute because he was not prosecuted under the presumptions of blood-alcohol levels in section 11—501.2(b). We held that, while there was in fact no presumption involved in the crime with which defendant was charged and the section the State alluded to was not applicable to the defendant, defendant had standing to contest the constitutionality of the statute he had been charged with violating. Our opinion today is consistent with this principle in *Ziltz* in that we hold the defendant may only contest the statutory provision as it is being applied to him, and as applied to him the presumption is not involved.

The defendant also challenges the statute on a number of due process grounds. He contends that the statute is overbroad because it makes an "attempt to lure" punishable the same as a completed act. The defendant, however, was not charged with attempt; he was charged with the completed act of luring a child for the unlawful purpose of committing criminal sexual abuse. "[O]ne may challenge a statute as overbroad on the ground that it may be applied unconstitutionally to situations and questions not before the court only if the statute is one

that may inhibit the exercise of rights of expression or association protected under the first amendment." (*People v. Haywood* (1987), 118 Ill. 2d 263, 275. See *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 610-15, 37 L. Ed. 2d 830, 838-42, 93 S. Ct. 2908, 2914-17.) This provision of the Criminal Code does not inhibit those first amendment rights. Therefore, defendant lacks standing to challenge the statute on this ground.

Defendant next argues the statute is overbroad because "the fact that the legislature made the age 16 years old rather than, say, 10 years, leaves open a number of problems given teenage propensity to enter automobiles without parental consent." Defendant has provided no authority or argument to support his claim and we are unable to find overbreadth problems here. In fact, the legislature has more narrowly tailored this provision of the child abduction statute. The child abduction statute defines child as a person under the age of 18 (Ill. Rev. Stat. 1987, ch. 38, par. 10—5(a)(1)); yet, for this particular provision the legislature lowered that age to 16. Moreover, the legislature, through the passage of this statute, has chosen to exercise its police powers for the protection of children. We have consistently stated that to constitute a legitimate exercise of that power, a "legislative enactment must bear a reasonable relationship to the public interest intended to be protected, and the means adopted must be a reasonable method of accomplishing the desired objective." (*Illinois Gamefowl Breeders Association v. Block* (1979), 75 Ill. 2d 443, 453.) We are unable to say that the legislature acted unreasonably or exercised its power too broadly when it defined child as a person under the age of 16 and made it an offense to lure a child of that age into an automobile for an unlawful purpose.

Finally, defendant contends that the statute is unconstitutional, claiming that the language "for other than a

lawful purpose" is not defined and is vague and indefinite. Further, due to the presumption, evidence of a specific unlawful purpose need never be offered, or if evidence is offered the statute is unclear whether it is sufficient to qualify as an unlawful purpose. Again, a defendant may not raise a constitutional challenge to a statute if the provision of the act does not affect him (*People ex rel. Scott v. Chicago Park District* (1976), 66 Ill. 2d 65, 71; *People v. Reiner* (1955), 6 Ill. 2d 337, 341), "and he may not pose hypothetical situations in which the statutory standards might conceivably be unconstitutionally vague." (*People v. Garrison* (1980), 82 Ill. 2d 444, 456.) Defendant was charged with the specific unlawful purpose of criminal sexual abuse, a violation of our Criminal Code (Ill. Rev. Stat. 1985, ch. 38, par. 12—15), and not with any vague conduct. Thus, defendant does not have standing to raise this issue. Furthermore, we do not believe that the standards of vagueness are met. The phrase "other than a lawful purpose" implies actions which violate our Criminal Code and does not fail "to give adequate notice as to what action or conduct will subject one to criminal penalties" (*People v. Vandiver* (1971), 51 Ill. 2d 525, 530), or is not so obscure that people "of common intelligence must necessarily guess at its meaning and differ as to its applicability" (*People v. Dednam* (1973), 55 Ill. 2d 565, 568).

For the aforementioned reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

*Reversed and remanded.*